CHARLES DONALD LUCAS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 11283

CHARLES DONALD LUCAS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 11284

CHARLES DONALD LUCAS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 11285

April 30, 1980          610 P.2d 727

*Wiener, Goldwater & Waldman,* and *Laurence A. Speiser,* Las Vegas, for Appellant.

*Richard Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, *Howard Douglas Clark* and *William Koot,* Deputy District Attorneys, Clark County, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

On November 15, 1977, the appellant admittedly performed sexual acts with a sixteen-year-old girl. The jury believed the acts were performed without the victim's consent and convicted the appellant of sexual assault.[1] Also, the jury believed appellant and a young girl named Bernadette had performed cunnilingus and fellatio in the victim's presence, and they therefore convicted appellant of open and gross lewdness. Finally, the jury convicted appellant of possessing drugs found in his apartment during a search, and of attempting to give quaaludes to the victim on November 10, and November 15, 1977. The court sentenced appellant to consecutive terms of life imprisonment with possibility of parole for sexual assault; one year in the county jail for open and gross lewdness; and a total of twenty-six years on the drug charges.

The victim met appellant at her place of employment in November, 1977. He was accompanied by two young girls, Sharon and Bernadette, one of whom he introduced as his daughter. He told the victim he would take photographs of her for use in a fashion portfolio. Accompanied by her mother, the victim went to the appellant's apartment on November 10. Beverly kept the mother occupied while appellant photographed the victim. Appellant offered the victim a quaalude, which she refused. He kissed Bernadette on the breasts while the victim watched. He claims he told the victim he would pay her for modeling and for "sexuality" if she returned.

On November 15, the victim returned to the apartment. The victim again refused appellant's offer of a quaalude. Appellant persuaded her to look at photographs of young girls, nude, posed suggestively, and he described the sexual abilities of the girls pictured. The appellant showed the victim a gun. He then showed the victim more than eighty slides, all of young girls in

---

[1] NRS 200.366(1) provides:

"A person who subjects another person to sexual penetration, or who forces another person to make a sexual penetration on himself or another, or on a beast, against the victim's will or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his conduct, is guilty of sexual assault."

sexually suggestive poses, and one slide showing himself with a young girl. He then demanded that the victim remove her clothes and lie down on the bed. She testified she did so because she had become scared and confused. Appellant placed his penis in the victim's mouth, and she began crying and choking. He then summoned Bernadette to the apartment. Although Bernadette and the appellant testified that the victim willingly joined them in a "sexual scenario," the victim testified she stood by the bed and watched as Bernadette and appellant performed cunnilingus and fellatio. The encounter ended when appellant asked the girls to touch each other and the girls refused.

The assignments of error are: (1) that the trial court erred in refusing to exclude the photographs and slides shown to the victim, and in refusing to exclude certain testimony from Bernadette, Sharon, and Sharon's sister Beverly; (2) that the trial court erred in denying appellant's motion to suppress the photographs, slides and drugs; (3) that the court erred in sentencing the appellant after a doubt had arisen as to his sanity; and (4) that the trial court erred in sentencing appellant because he considered appellant's misconduct with young girls other than the victim.

1. The victim testified that prior to viewing the photographs, she intended to resist any advances made by the appellant. She testified that after she viewed the slides, she became scared and confused. When appellant demanded that she remove her clothes and submit, she did. Thus, we think, the State was entitled to complete the story of the crime by proving the immediate context of happenings near in time and place. Allan v. State, 92 Nev. 318, 320, 549 P.2d 1402, 1403 (1976).

The crucial question in determining if a sexual assault has occurred is whether the act is committed without the victim's consent. The photographs and slides helped to furnish a basis for the jury to find that the victim was not a willing participant, but rather that appellant caused her to perform fellatio against her will, as she testified. See State v. McClain, 245 P.2d 278 (Ariz. 1952); cf. State v. Natzke, 544 P.2d 1121, 1124 (Ariz.App. 1976). Thus, the photographs and slides had relevance.

2. Appellant argues, however, that even if that be so, the trial court erred in admitting the slides and photographs because their prejudicial impact upon the jury outweighed their probative value. NRS 48.035(1). A trial court's evaluation of

such an issue will not be reversed unless it is manifestly erroneous. *See* Jones v. State, 85 Nev. 4, 448 P.2d 702 (1969). After evidentiary hearings, the trial court admitted those photographs and slides which appellant could identify. The police seized more than 3,000 photographs in a search of appellant's apartment, of which approximately 450 were similar to those shown the jury. After consideration of the 85 slides and other photographs, we cannot declare the balance struck by the trial court to be manifestly erroneous.

3. Appellant also contends that certain testimony from Bernadette, Sharon and Beverly should have been excluded. The girls testified that appellant gave them drugs, took pictures of them in the nude, and induced them to perform sexual acts with himself and others. The acts to which the girls testified were not remote in time, and were similar to acts with the victim. The fact that they accepted the drugs and may have been willing to perform the sexual acts does not make the challenged testimony inadmissible. *Cf.* Simpson v. State, 94 Nev. 760, 587 P.2d 1319 (1978).

4. Appellant moved to suppress photographs, slides and drugs seized at his apartment. After evidentiary hearings, the court determined that the search had not exceeded permissible bounds. We agree. Information provided by a victim of crime to a police officer is presumptively reliable. *Cf.* State v. Turkal, 599 P.2d 1045 (N.M. 1979); People v. Hill, 528 P.2d 1, 21 (Cal. 1974). In her statement, given November 17, the victim did not refer to the dates of the crimes, but referred to "Thursday" and "Tuesday." We consider it reasonable for the court to infer that the victim referred to the past Thursday, November 10, and the past Tuesday, November 15. We further hold there was probable cause for the court to believe the photographs and slides of nude minors would be in appellant's apartment on December 1, the date the search warrant issued. Photographs and slides are items more likely to be retained than discarded. *See* State v. Smith, 593 P.2d 281 (Ariz. 1979); State v. Kasold, 521 P.2d 995 (Ariz. 1974). Finally, we believe an error in stating the apartment address was not fatally defective. The search warrant enabled the officers executing the warrant to locate and identify the apartment to be searched, and there was no reasonable possibility that another premises might be searched. *See, e.g.,* United States v. Darensbourg, 520 F.2d 985 (5 Cir. 1975); United States v. Melancon, 462 F.2d 82, 94 (5 Cir. 1972); State v. Morgan, 583 P.2d 889 (Ariz. 1978).

5. Appellant also contends that the trial judge erred when he refused to continue sentencing. During an examination by a psychiatrist, the psychiatrist concluded that appellant was suffering from a character disorder; however, the psychiatrist also determined that a diagnosis of psychosis was unwarranted. NRS 178.405 provides that proceedings must be suspended if doubt arises as to the accused's sanity.[2] The doubt referred to is doubt in the mind of the sentencing judge. Williams v. State, 85 Nev. 169, 174, 451 P.2d 848, 851 (1969). Appellant has not demonstrated that degree of sufficient and reasonable doubt as to his sanity which we previously have required. *See* Williams v. State, *id.* at 173, 451 P.2d at 851; Warden v. Conner, 93 Nev. 209, 562 P.2d 483 (1977); *cf.* Doggett v. Warden, 93 Nev. 591, 595, 572 P.2d 207, 209 (1977).

Finally, appellant contends that in sentencing him the trial judge improperly considered evidence of crimes which had not been charged. Absent a showing of prejudice resulting from impalpable or highly suspect evidence, this court will refrain from interfering with sentence imposed. Silks v. State, 92 Nev. 91, 545 P.2d 1159 (1976). The trial judge's remarks reflect inferences which reasonably could be drawn from evidence presented at trial and the presentencing report. *Also see* United States v. Schipani, 435 F.2d 26 (2nd Cir. 1970); State v. Kasold, cited above. The sentences are within statutory limits and are affirmed.

Affirmed.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

MANOUKIAN, J., concurring:

Although I concur in the majority opinion, I have concern with the admissibility of the testimony of Bernadette and Beverly. Here, the trial court improperly extended our previous holdings regarding prior acts of misconduct and the use of such evidence against a defendant. Not only did these witnesses testify as to the acts directly involving Denise, they were allowed to testify as to how appellant contacted them and how they were involved in sexual activities with appellant's adult friends.

---

[2]"175.405 Suspension of trial, pronouncement of judgment when doubt arises as to defendant's sanity. When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if doubt shall arise as to the sanity of the defendant, the court shall suspend the trial of the indictment or information or the pronouncing of the judgment, as the case may be, until the question of insanity is determined."

The trial court reasoned that this testimony demonstrated a scheme indicating an "intent of the [appellant] to seduce [the victim] against her will." In allowing this testimony, the district court relied upon Findley v. State, 94 Nev. 212, 577 P.2d 867 (1978), and McMichael v. State, 94 Nev. 184, 577 P.2d 398 (1978). This was error.

This court has held that evidence of prior bad acts may be admitted to prove the crime charged when it tends to establish intent or "a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others . . . ." Nester v. State, 75 Nev. 41, 46, 334 P.2d 524, 527 (1959). Here, there were many similarities in the circumstances surrounding the manner in which appellant first met Bernadette and Beverly and the manner in which he became acquainted with Denise. This included his promise of a monetary remuneration for modeling and the representation that he would complete a portfolio for each of the girls. Beyond those similarities, however, the situations differ. Bernadette and Beverly stated that they had sex with appellant and his friends. There was no real suggestion that these acts were involuntary.

In previous cases we have allowed the testimony of witnesses evidencing the prior sexual misconduct of a defendant. This has involved similar acts by the defendant either with the present victim or with persons other than the complaining witness. See Simpson v. State, 94 Nev. 760, 587 P.2d 1319 (1978); Willett v. State, 94 Nev. 620, 584 P.2d 684 (1978); Findley v. State, 94 Nev. 212, 577 P.2d 867 (1978); McMichael v. State, 94 Nev. 184, 577 P.2d 398 (1978); Allan v. State, 92 Nev. 318, 549 P.2d 1402 (1976). I believe the fact that Beverly and Bernadette willingly engaged in sexual activities with appellant and other men is irrelevant toward proving the instant nonconsensual acts involving Denise. See Lovely v. United States, 169 F.2d 386 (4th Cir. 1948) (in rape prosecution, where intercourse was not at issue and only issue was that of consent, evidence that accused committed rape several weeks prior to the alleged crime was inadmissible); State v. Irving, 601 P.2d 954 (1979) (detailed evidence of defendant's attempted rape of another woman on previous occasion was inadmissible as substantive evidence to corroborate the victim's claims of defendant's use of force and her lack of consent). Cf. Oliphant v. Koehler, 594 F.2d 547 (6th Cir. 1979) (circumstances surrounding prior nonconsensual acts were relevant toward issue of consent in instant case).

Nevertheless, I believe that the testimony offered by Beverly and Bernadette simply verbalized the documentary evidence of

which appellant complains and which the majority has concluded does not constitute error. Such evidence is therefore cumulative. Moreover, even though here, the admission of the prior acts of sexual conduct under the "liberal judicial attitude" in admitting the prior acts of sexual conduct, McMichael v. State, 94 Nev. at 189, 577 P.2d at 401, constituted error, such error was harmless beyond a reasonable doubt in view of the other overwhelming evidence of guilt. Bushnell v. State, 95 Nev. 570, 573-74, 599 P.2d 1038, 1040-41 (1979).