THE STATE OF NEVADA, Petitioner, *v.* THE EIGHTH
JUDICIAL DISTRICT COURT OF THE STATE OF
NEVADA IN AND FOR THE COUNTY OF CLARK,
THE HONORABLE JOSEPH S. PAVLIKOWSKI, Dis-
trict Judge, Department No. III, and SEYMORE
HUSNEY, Respondents.

No. 13406

February 6, 1984                                      677 P.2d 1044

*Brian McKay,* Attorney General, Carson City; *Robert J.
Miller,* District Attorney, Clark County, for Petitioner.

*Wright, Shinehouse & Stewart,* and *Reid & Alverson,* Las
Vegas, for Respondents.

## OPINION

By the Court, ZENOFF, SR. J.:[1]

In this action, the State of Nevada seeks a writ of mandamus to compel the district court to reinstate a sentence originally imposed against respondent, Seymore Husney, after Husney pleaded guilty to one count of an infamous crime against nature, NRS 201.190. The State argues that the district court's modification of sentence after Husney had begun to serve that sentence violated applicable Nevada law. *Cf.* NRS 176.185(4). We conclude, however, that under the circumstances of this case the district court was within its jurisdiction in so modifying the sentence. Accordingly, we decline to grant the State's plea for extraordinary relief.

In order to address the State's petition, it is essential that we establish the procedural posture of this case. In October, 1979, respondent Seymore Husney entered a plea of guilty pursuant to a plea bargain to one count of an infamous crime against nature, NRS 201.190.[2] The indictment under which Husney was charged in essence alleged that in May, 1977, Husney had

---

[1]SENIOR JUSTICE DAVID ZENOFF was assigned to participate in the decision of this matter pursuant to the Nevada Constitution, art. 6, § 19(1)(a) and 19(1)(c), and SCR 10. CHIEF JUSTICE NOEL E. MANOUKIAN voluntarily disqualified himself from the decision of this matter, and the Governor appointed the Honorable James Brennan, district judge, to sit in his stead. Nev. Const., art. 6, § 4.

[2]At the time, NRS 201.190 provided, in pertinent part:

[E]very person of full age who commits the infamous crime against nature shall be punished: (a) . . . where such offense is committed upon the person of one who is under the age of 18 years, by imprisonment in the state prison for life with possibility of parole, eligibility for which begins . . . when a minimum of 5 years has been served.

*See* 1977 Nev. Stats. 1632. This section has subsequently been amended. *See* NRS 201.190.

allowed a female person under the age of 18 years to perform fellatio upon him.

At the time of sentencing, Husney was advised by the court that the potential maximum sentence which he might receive was life imprisonment with the possibility of parole. No evidentiary hearing was conducted at sentencing; instead, the only evidentiary material before the district court concerning the charged offense was contained in a 192-page grand jury transcript. This transcript contained testimony previously elicited from the victims, girls between the ages of 11 and 15 years at the time the charged events occurred, detailing the alleged involvement of several men, including Husney, in sexual misconduct. The lengthy transcript was compiled during several separate sessions of the grand jury, during which a number of witnesses testified. As this was a grand jury proceeding, Husney was neither present nor afforded an opportunity to cross-examine witnesses.

In addition to the grand jury transcript, the district court had before it a presentence report prepared by the Department of Parole and Probation, and a psychiatric evaluation prepared by Dr. J. A. Jurasky, director of the Psychiatric and Psychological Center located in Las Vegas. Both the presentence report and the psychiatric evaluation concluded that Husney's deep remorse, absence of any prior criminal record, and previously irreproachable position in the community made Husney a suitable candidate for probation. In the psychiatric evaluation Dr. Jurasky also noted that Husney was "not by nature or personality an immoral person or one who normally takes advantage of or preys upon others." Dr. Jurasky emphasized that Husney had suffered "enormous" pain and humiliation as a result of his actions, and concluded that he would "not constitute a menace to the health, safety, or morals of others."

Despite the favorable recommendations contained in the presentence report and psychiatric evaluation, Husney was denied probation. After argument by counsel for the State and for Husney, the district court judge stated that he had read the grand jury transcript and had come to the conclusion that Husney had committed "a great wrong." Husney was then sentenced to life imprisonment with the possibility of parole.

The judgment of conviction was subsequently signed by the district court judge, filed in the clerk's office, and Husney began serving his sentence at the Nevada State Prison. Shortly thereafter, Husney filed a timely appeal with this court. At the same time, however, Husney filed a motion in the district court seeking a modification and reduction of his sentence. In this motion, Husney contended that the district court judge had

misapprehended or had been misinformed as to relevant information presented at the sentencing hearing, and asked that his sentence be modified to allow release on probation.

After litigation on procedural issues which do not require discussion here, the district court ruled on Husney's motion. Reviewing the record, the district court concluded that it had indeed misapprehended or had been misinformed on information presented at the sentencing hearing. The district court therefore granted Husney's motion, vacated the original sentence, reinstated the sentence of life with the possibility of parole, and then suspended the sentence and placed Husney on probation for a period not to exceed five years. This probation was conditioned upon Husney's incarceration in the county jail for six months; however, the court found that this six-month term had been satisfied by the period Husney had already served in the Nevada State Prison. Accordingly, Husney was released from prison in July, 1980; the record indicates that Husney has cooperated with probation officials and has remained at liberty on probation for over three years during the pendency of this proceeding.

## JURISDICTIONAL CONSIDERATIONS

Having established the procedural posture of this case, we turn to an analysis of the State's petition. The State petitions this court for an extraordinary writ of mandamus to compel the district court to vacate its order suspending Husney's sentence and to reinstate the original sentence of life imprisonment with the possibility of parole. The State argues that under the established law of this jurisdiction, once Husney began to serve his sentence, the district court was without authority to suspend or modify that sentence. Given the particular factual setting presented in this case, we disagree.

The State's position is based in large part upon a perceived incongruity in Nevada law pertaining to sentencing. The State argues that a sentencing court is prohibited by statute from suspending a sentence once a defendant has actually begun to serve that sentence. The State's position is based in part upon NRS 176.185(4), which provides, in pertinent part: "The court shall not suspend the execution of a sentence of imprisonment after the defendant has begun to serve it."[3] The State maintains that this language establishes that once a defendant has commenced serving his sentence, the district court is totally without jurisdiction to suspend or modify it. *See, e.g.,* Miller v.

---

[3]During the relevant period, this language was contained in NRS 176.185(3). *See* 1981 Nev. Stats. 369. As the cited language is virtually identical to the previous codification, for convenience we will refer to the more recent enactment.

Hayes, 95 Nev. 927, 604 P.2d 117 (1979); State v. District Court, 85 Nev. 485, 457 P.2d 217 (1969).

■■■■ ■ ■

This court has recognized, however, that a sentencing court may under certain circumstances entertain a motion to vacate or modify its orders and judgments. In the seminal case of Warden v. Peters, 83 Nev. 298, 429 P.2d 549 (1967), we addressed the issue of whether a trial court has the power to set aside a judgment of conviction after a plea of guilty and commencement of sentence. We held:

> We deem the procedural label to be of little importance. *The fact remains that courts which make a mistake in rendering a judgment which works to the extreme detriment of the defendant will not allow it to stand uncorrected.* In a situation such as this, where, as discussed below, the court has inherent power to reconsider a judgment for good cause shown, *we hold that such an issue may be raised by a motion to vacate judgment. . . .*

83 Nev. at 301 (emphasis added); *see also* State v. District Court, 85 Nev. at 488. *Warden v. Peters* has never been overruled, and has been cited in several recent cases. *See* State v. Clark, 90 Nev. 144, 146, 520 P.2d 1361 (1974); Miller v. Hayes, 95 Nev. at 931; Sheriff v. Blasko, 98 Nev. 327, 647 P.2d 371 (1982). Accordingly, despite the State's reliance on NRS 176.185(4), it is clear that when the sentencing court "makes a mistake in rendering a judgment which works to the extreme detriment of the defendant," the district court has jurisdiction to vacate or modify the suspect sentence or judgment.[4]

---

[4]In *Warden v. Peters,* the defendant moved to set aside a guilty plea to grand larceny on the grounds there had been no asportation of the subject property. The sentencing court set aside the judgment of conviction, allowed the defendant to withdraw his guilty plea, immediately accepted a guilty plea to attempted grand larceny, and then fixed a new sentence to run concurrently with a previously imposed burglary sentence. 83 Nev. at 300-301. In upholding the action of the sentencing court, we explicitly held that when a mistake is made in rendering a *judgment,* the sentencing court has the inherent power to reconsider that judgment, and if the judgment is void the sentence automatically fails. *Id.* at 302.

It has been suggested that we might restrict the principle articulated in *Peters* to the narrow facts of that case, so that absent a vacation of judgment, the district court may not vacate or suspend a defendant's sentence. The significance of such a restriction should be obvious; as Husney's motion did not challenge the validity of the judgment obtained through the guilty plea, if *Peters* were restricted as suggested that case would not provide the district court with authority to correct Husney's sentence. We believe, however, that *Peters* cannot be legitimately restricted in the manner suggested. In *Peters* we expressly noted that "[t]he trial court has inherent jurisdiction to vacate or modify its orders and judgments . . . ," and "[w]hen an improper sentence is the sole basis of the complaint, no

The district court's inherent authority to correct a judgment or sentence founded on mistake is in accord with the constitutional considerations underlying the sentencing process. The United States Supreme Court has expressly held that where a defendant is sentenced on the basis of materially untrue assumptions concerning his criminal record, "[the] result, whether caused by carelessness or design, is inconsistent with due process of law." Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252 (1948). Further, the cases clearly establish that constitutionally violative "materially untrue assumptions" concerning a criminal record may arise either as a result of a sentencing judge's *correct* perception of inaccurate or false information, or a sentencing judge's *incorrect* perception or misapprehension of otherwise accurate or true information. *See* United States v. Myers, 374 F.2d 707, 710-712 (3rd Cir. 1967); United States v. Malcolm, 432 F.2d 809, 816 (2nd Cir. 1970). The latter situation is illustrated by Crowe v. State, 194 N.W.2d 234 (S.D. 1972), in which the sentencing judge misread an otherwise accurate F.B.I. report and sentenced the defendant while under the mistaken assumption that he had suffered four rape convictions. In fact, the F.B.I. report clearly indicated that the defendant had suffered only one conviction for rape. The South Dakota Supreme Court affirmed the conviction but remanded the case for resentencing, finding the defendant's due process rights had been violated as the result of the sentencing judge's subjective misapprehension of the report. *Id.* at 246; *see also* United States v. Myers, 374 F.2d at 710-712 (sentencing judge misread criminal record and sentenced defendant while under mistaken assumption he had suffered three prior convictions for strong arm robbery); United States v. Weston, 448 F.2d 626 (9th Cir. 1971) (sentencing judge's reliance upon presentence investigation report predicated on limited factual basis amounts to due process violation).

In light of this authority, it is clear that a sentencing judge's misapprehension of a defendant's criminal record may result in a violation of the defendant's right to due process of law.

---

vacation of conviction or adjudication is necessary since justice may be done by correction of the sentence. . . ." Further, in a due process context there appears to be no legitimate distinction between a constitutionally defective sentence and a constitutionally defective judgment. This is implicitly recognized in Nevada's post-conviction relief statutes, which provide that the jurisdiction of the district court in post-conviction relief hearings extends to those cases in which the court finds that there has been a specific denial of the petitioner's constitutional rights "with respect to his conviction *or sentence.*" NRS 177.320 (emphasis added).

When this potential due process violation is considered in conjunction with the district court's inherent authority to correct sentences founded on mistakes which work to the exteme detriment of the defendant, it is equally clear that the district court has authority to correct or modify a sentence which is the result of the sentencing judge's misapprehension of a defendant's criminal record.

It must be noted, however, that not every mistake or error which occurs during sentencing gives rise to a due process violation. The cases implicitly recognize this point; a due process violation arises only when the errors result in "materially untrue" assumptions about a defendant's record. *See* Townsend v. Burke, 334 U.S. at 741. This parallels the basis of the district court's inherent authority to correct sentences based on mistake; the court has jurisdiction to vacate or modify the defective sentence when a mistake "works to the extreme detriment of the defendant." Warden v. Peters, 83 Nev. at 301. We believe that these considerations represent an appropriate jurisdictional limit to the correction or modification of a defective sentence by a district court. Accordingly, we hold that if a sentencing court pronounces sentence within statutory limits, the court will have jurisdiction to modify, suspend or otherwise correct that sentence if it is based upon materially untrue assumptions or mistakes which work to the extreme detriment of the defendant.[5]

### MATERIALLY UNTRUE FOUNDATION

Having established the jurisdictional threshold of the district court's authority to correct or modify a sentence—that the sentence was based upon a materially untrue foundation—we turn

---

[5]During oral argument, the State conceded that the district court would have jurisdiction to correct a sentence which was based on a materially untrue foundation. The following colloquy occurred:

The Court (SPRINGER, J.): "Do you believe that mistake of fact could ever justify a trial judge in changing a sentence after an imposed sentence had been started?"

The State (Mr. Koot): "Not simply a mistake of fact. I would choose the wording of the cases, 'materially and substantial mistake of fact,' or in the working of the *Townsend* court, United States Supreme Court, I would choose the wording, 'extensively and materially false.' "

". . ."

The Court (SPRINGER, J.): "So in this case, if Judge Pavlikowski sentenced on the basis of an assumption which was materially untrue, you would concede he would then at least have the power to change the sentence?"

The State (Mr. Koot): "After the proper certification, which was finally done in this case, yes, I believe so, if it was extensively and materially false."

to the second issue presented in this case: Did the district court err in finding that respondent Husney's sentence of life imprisonment with the possibility of parole had been based on a materially untrue foundation?

In addressing this question, it is important to emphasize that the jurisdictionally required "materially untrue foundation" can result either from the district court's reliance upon untrue information, or from the court's subjective misapprehension of otherwise true information. In either case, if the resulting sentence foundation is materially untrue, the court has the power to correct or modify the sentence. Given this analytic framework, we now examine the record to determine if the district court correctly found that the sentence imposed in the instant case was based on a materially untrue foundation, either because the district court relied upon untrue information or misapprehended true information.

We initially note that the district court's decision may be read as indicating that the modification of sentence was based both upon a finding that the court had been presented with untrue information during the sentencing hearing, and on a finding that the court had subjectively misapprehended otherwise true material. In its oral decision, the court addressed specific points upon which the judge felt he had been misinformed, and then concluded that, "I think there was a *misstatement of facts* before the court. Therefore, I think that under the *mistaken belief of facts,* the court has jurisdiction to entertain this motion to modify sentence." (Emphasis added.) The court's written order modifying sentence states that "the Court, at the time of imposition of sentence . . . was proceeding under *mistake of fact* that [Husney] had sexual relations with [name deleted], then eleven years of age and other possible victims and *was further mistaken as to factual matters* as more fully set forth in the Court's oral decision . . . ." (Emphasis added.)

The district court's decision to modify sentence thus was evidently based in part on the court's conclusion that it had been misled by the prosecutor at the time of sentencing because some of the information and argument presented by the prosecutor was untrue. In its oral decision, the court stated, *inter alia,* that it had been unintentionally misled by the prosecutor's statements into believing that Husney was "really involved" in illicit activities with a Don Lucas, the individual responsible for the initial sexual corruption and procurement of the young girls

involved.[6] The court also found that, despite the representations of the prosecutor, an eleven-year-old girl was not "really involved" with Husney, as Husney had not taken nude photographs of the girl or been present when such photographs were taken by others. Further, the court found that there was no evidence that Husney had supplied "drugs" to the victims.

If the court was misled at sentencing into believing that Husney was closely associated with Lucas in his procuring activities, that Husney had sexual relations with an eleven-year-old girl, and that Husney had supplied drugs to the victims, it is difficult to envision a clearer example of a materially untrue sentence foundation. Yet when the transcript of the sentencing hearing is compared with the grand jury transcript, it appears that the grand jury testimony does not support the prosecutor's argument and representations to the sentencing judge.

For example, at sentencing the prosecutor did inaccurately cite the degree of Husney's involvement with Lucas. The grand jury transcript indicates that although Husney was a paying customer and to a degree an associate of Lucas, there was no evidence that Husney was involved in the initial procurement or economic exploitation of the victims. At sentencing the prosecutor nonetheless vehemently argued that Husney and Lucas were virtually partners and equally culpable—"almost a team in this endeavor"—and that, although others were involved, "Husney stands alone with Mr. Don Lucas and apart" from others involved in the case. This hyperbolic characterization is simply not supported by the record.[7] While Husney's conduct is certainly indefensible, the district court would have been within its discretion in distinguishing between the

[6]Lucas apparently would approach young girls and represent himself as a professional photographer. If the victim was receptive to his advances, Lucas would offer to employ her as a "model." In the course of photography sessions, Lucas would ply his victims with quaaludes, a controlled substance known to weaken an individual's inhibitions, and attempt to involve the victim in sexual "scenarios." Lucas was arrested for these illicit activities, and subsequently convicted of forcible sexual assault and related charges. *See* Lucas v. State, 96 Nev. 428, 610 P.2d 727 (1980).

[7]Although it is somewhat collateral to the issues presented in this petition, the record reveals that several other individuals were arrested and prosecuted as a result of their involvement with Lucas and their utilization of his services as a procurer of underage girls. The record appears to indicate that these similarly-situated defendants pleaded guilty to charges of an infamous crime against nature, as did Husney, but were sentenced to probation rather than life imprisonment with the possibility of parole. In this regard, we note that just before correcting Husney's sentence, the district court judge stated that he had read the transcripts of these other cases and discussed one case with the sentencing judge.

Further, both at sentencing and at oral argument on this matter, the

lesser responsibility of a patron such as Husney and the greater culpability of an initiator and procurer who exploited the victims for economic gain.

The court also found that Husney was not "really involved" with the eleven-year-old girl, as Husney had not taken nude photographs of the girl nor was present when nude photographs of the girl were taken by others. Husney's lack of involvement with the eleven-year-old is supported by the grand jury transcript. However, a fair reading of the prosecutor's comments at sentencing would indicate that the prosecutor did allege that Husney had taken nude photographs of the eleven-year-old girl. Again, this allegation is simply not supported by any evidence before the sentencing court.

The district court further found that the prosecutor unintentionally misrepresented to the court that Husney had dispensed drugs to the victims. The district court is correct. Although the grand jury transcript contained testimony to the effect that on two occasions Husney had served two of the victims a mixture of vodka and orange juice, there was no evidence that Husney had supplied the victims with any drugs. The prosecutor, however, argued that "[i]n the sexual scenario which is the subject matter of the indictment before the Court, the same thing occurred preceding the sexual acts, photographs, *qualudes* [sic] and vodka." The prosecutor thus intimated to the court that Husney had furnished controlled pharmaceuticals to the victims. As with the other two allegations, the prosecutor's comments are totally without evidentiary support.

Given these misrepresentations, it is clear that the record supports the district court's evident determination that Husney's sentence rested on a foundation which was materially untrue. In the alternative, the record equally supports the court's finding that it had subjectively *misapprehended* that Husney had sexual relations with the eleven-year-old girl, and had supplied drugs to the eleven-year-old girl and other victims. With this subjective misapprehension forming a part of the foundation of respondent's sentence, the court was clearly

State continually emphasized that Husney and Lucas were virtual "partners," as if to justify Husney's sentence on the grounds that Lucas had also received a sentence of life with the possibility of parole. In fact, the State's implicit justification is totally without foundation; Lucas was convicted of *forcible sexual assault* and related charges. *See* Lucas v. State, 96 Nev. at 430. Any comparison between Lucas and Husney is suspect on additional grounds; whereas Husney presented an extremely favorable psychiatric report detailing his anguish, humiliation and deep remorse, the psychiatrist examining Lucas concluded that he was suffering from a character disorder. *Id*. at 433.

justified in determining that the sentence rested on a materially untrue foundation. Although Husney's guilty plea was based on sexual misconduct with a fourteen-year-old girl, as previously noted there is absolutely no basis in the record which would support an inference that Husney also had sexual relations with the younger girl. Further, although the grand jury transcript indicates that several of the young girls involved were supplied drugs by other participants—in the form of quaaludes—there is absolutely no indication that Husney supplied quaaludes to the eleven-year-old or any other of the girls. The district court's misapprehension as to these facts would thus clearly create a sentence foundation which was materially untrue. Given this defective foundation, the court would have jurisdiction to correct the defective sentence.

## *SUMMARY*

We wish to make clear that we in no way question the district court's conclusion that the misrepresentations made by the prosecutor during sentencing were unintentional. Nonetheless, misrepresentations did occur during sentencing. These misrepresentations, whether considered in conjunction with the subjective misapprehensions of the district court judge or considered independently, clearly created a materially untrue foundation upon which the sentence imposed in this case rested.

In the instant case we are not presented with the situation facing the court in State v. Clark, 90 Nev. 144, 520 P.2d 1361 (1974), where the sentencing court, in a post-conviction relief proceeding, improperly attempted to "correct" a sentence on the grounds that the sentencing judge had "misunderstood" applicable parole policies. In fact, in *Clark* the experienced trial court judge knew that after sentencing the matter of parole was in the hands of the parole board, subject to the rules and discretion of that body, and that release was subject to the parole board's approval. *Id.* at 146. Thus, the majority of the court concluded that at the time of sentencing the district court judge neither subjectively misunderstood nor was misinformed as to the possibilities of parole.[8]

In contrast, in the instant case the record supports the district court's determination that the court was unintentionally

---

[8]However, JUSTICES MOWBRAY and BATJER, believing that the district court's misapprehension of the parole policies amounted to a sufficient mistake of fact, dissented. 90 Nev. at 147. Justices MOWBRAY and BATJER not only recognized the propriety of a district court correcting a sentence entered pursuant to a mistake of fact, under the doctrine of *Warden v. Peters, supra;* they also found the case factually akin to *Crow v. State, supra,* wherein the sentencing judge had misread an accurate F.B.I. report. 90 Nev. at 148.

misinformed by the prosecutor at sentencing and misapprehended some of the information presented. The record also supports the district court's implicit finding that these mistakes resulted in a materially untrue sentence foundation which worked to the extreme detriment of the defendant. On appeal, every presumption is in favor of the propriety of the trial court's action in the absence of a showing of error. Johnson v. Johnson, 87 Nev. 244, 248, 484 P.2d 1072 (1971). Given the extremely favorable presentencing and physchiatric reports, Husney's total lack of a prior criminal record, his position in the community, and the actual nature of his involvement with Lucas, we are not prepared to overturn the district court judge's determination that justice demanded the defective sentence he imposed be corrected.[9]

Accordingly, we deny the petition for extraordinary relief.

SPRINGER, J., concurs.

BRENNAN, D. J., concurring:

Who is to say what interpretation a judge gave to statements and argument made to him at the time of sentencing other than that judge.

Whether or not a judge misinterpreted what was told to him; whether he thought he heard counsel say "the defendant did" instead of "the defendant didn't," whether he failed to grasp

---

[9]We additionally note that there are further considerations which arguably mandate that we deny the State the relief requested. Although mandamus in some circumstances is a proper remedy to compel the vacation of a judgment which unlawfully suspends the execution of a sentence in a criminal case (see State v. District Court, 85 Nev. 485, 487, 457 P.2d 217 (1969)), we do not believe that mandamus would necessarily have been · appropriate in this case given its procedural history. As previously noted, respondent Husney originally appealed his conviction and sentence; for jurisdictional reasons this appeal was remanded to the district court so the court would have jurisdiction to address the motion to modify sentence. Thereupon, if dissatisfied, the State's appropriate remedy was to appeal. See State v. Clark, 90 Nev. 144.

Further, were we to pass favorably upon the State's petition, and deal with this matter in the manner suggested, this court would in effect be ruling that the testimony contained in the grand jury transcript and presented at sentencing was true, and that the sentence imposed was the only sentence conceivable under the circumstances. Such a ruling would effectively eliminate at least two of the issues Husney might legitimately present on appeal: (1) that his sentence, based in part on the grand jury testimony of minors who were not subject to cross-examination, was based on impalpable or highly suspect evidence (cf. Silks v. State, 92 Nev. 91, 545 P.2d 1159 (1976)), and (2) that his sentence of life imprisonment with the possibility of parole was, given the facts of this case, disproportionate. Cf. Solem v. Helm, 51 U.S.L.W. 5019 (U.S. June 28, 1983). However, as we believe the district court did not exceed its jurisdiction in correcting respondent's sentence, we need not address this issue.

the meaning of what others attempted to convey to him in their statements; whether due to impaired hearing or for any other reason is immaterial when that judge later says that he misunderstood, misinterpreted or did not hear what was stated to him.

And who but that sentencing authority can say that had he heard what was spoken to him or grasped the full import and essence of counsel's argument that his sentence would not have been other than that imposed.

The sentencing judge should not have to file an affidavit with the State Board of Pardons Commissioners stating that he based the sentence he imposed on an erroneous interpretation of the facts presented to him and that had he been acting under a proper assessment and interpretation of the facts that his sentence would have been less harsh or severe than that imposed.

To require a procedure similar to the above stated would undoubtedly put the sentencing court in the untenable position of having to subject itself to cross-examination before the Board of Pardons. It is one thing for the judge to call a case back to his court admitting to the defendant that the court erred in its disposition of the case and proceed to rectify its error. It is another matter when a defendant must rely on a sentencing judge to swallow his pride and admit to the Board of Pardons that he erred in understanding what was related to him and misinterpreted the facts.

To deny a defendant his right to have the sentencing authority reconsider its erroneous sentence and force the defendant to rely on a higher tribunal to correct an admitted injustice, not only denies him of his right to the opportunity to have the sentencing authority impose a sentence that is commensurate with the gravity of the offense from that sentencing authority's viewpoint but also forces the defendant to take his chances with the Board of Pardons reducing his sentence as compared to a certainty of modification by the lower court.

The possible irreversible devastation to a defendant's life dictates and demands that the sentencing court have the inherent power and authority to correct this type of error.

If a trial court has the authority to correct an improper conviction, a fortiori it has the authority to correct an improper sentence.

STEFFEN, J., with whom MOWBRAY, J., agrees, dissenting:

Since I have been unable to glean any factual or legal basis for the position of my brethren in the majority, I must dissent.

The State of Nevada petitioned this Court for a writ of mandamus to compel the district court to reinstate the original sentence imposed against the defendant, Seymore Husney, after Husney entered a plea of guilty to one count of the infamous

crime against nature. In my judgment, the district court clearly acted without jurisdiction in modifying Husney's sentence, and mandamus should have issued. State v. District Court, 85 Nev. 485, 457 P.2d 217 (1969).[1]

In February and March of 1978, three indictments were issued charging Husney with a total of ten counts of assorted sexual misconduct. Pursuant to the terms of a plea bargain agreement with the State of Nevada, Husney entered a plea of guilty to one count of the infamous crime against nature.[2] The conduct upon which the guilty plea was based involved a 14-year-old girl. In return for Husney's voluntary plea, the remaining counts in all three indictments were dismissed.

On January 8, 1980, the trial judge sentenced Husney to a term of life in prison with the possibility of parole. The following day the judgment of conviction was signed by the sentencing judge and filed in the clerk's office. Husney commenced serving his sentence at the Nevada State Prison.

During the ensuing months, Husney sought relief from incarceration by moving the district court for a modification and reduction of sentence. Ultimately, after proceedings in this Court which are not germane to the instant proceeding, the district judge granted Husney's motion. Thereafter, the district court vacated the original sentence, reinstated the sentence of life with the possibility of parole, suspended the sentence and placed Husney on probation for a period not to exceed five years. Probation was conditioned upon Husney's incarceration in the county jail for six months, a condition which the sentencing judge deemed satisfied by the equivalent period Husney had already served in the Nevada State Prison. Accordingly, Husney was immediately released from prison.

The State now petitions this Court for the issuance of mandamus to compel the district court to vacate its order suspending Husney's sentence and to reinstate the original sentence. The State contends that under the established law of this State, once Husney commenced serving his sentence, the district court

[1]Curiously, the majority now question the propriety of mandamus as an avenue of relief to the State. In this case we previously issued a writ of mandamus citing State v. Breen, 95 Nev. 208, 591 P.2d 1141 (1979), because the district court had exceeded its jurisdiction in its first attempt to modify Husney's sentence.

[2]At the time of Husney's plea, punishment parameters were provided under the following pertinent provisions of NRS 201.190:

Every person of full age who commits the infamous crime against nature shall be punished: (a) . . . where such offense is committed upon the person of one who is under the age of 18 years, by imprisonment in the state prison for life with possibility of parole, eligibility for which begins . . . when a minimum of five years has been served.

was powerless to suspend the sentence. For reasons hereinafter specified, I agree.

The issues presented by this appeal are illumined by focusing first on the basis for the district court's ruling. Specifically, the sentencing judge entered the following findings: (1) "that the court was mistaken in [accepting as] fact that Husney was really involved in this matter with Mr. Lucas";[3] (2) "after reading the transcript [grand jury] I find that Sharon . . . was not really involved with Sy Husney whatsoever";[4] "that Mr. Husney at that time . . . [did not have] any pictures taken with Sharon nor was he present when any other pictures were taken"; (4) "nor was [sic] any drugs supplied by the defendant Husney"; (5) "that Mr. Koot's[5] argument that Husney was certainly involved with this young girl of 10 or 11 years of age was not intentionally made"; and (6) that Mr. Koot did not intend "to misrepresent to the court [Husney's involvement with Sharon] at that time, but the court took his word at that time, meaning that Husney was involved." The judge then concluded: "Therefore, at the time of sentencing on January 6, 1980, I think there was a misstatement of facts before the court. Therefore, I think under that mistaken belief of facts, the court has jurisdiction to entertain this motion to modify sentence."

I have thoroughly reviewed the same transcript of proceedings before the grand jury which the sentencing judge reviewed prior to both the original sentencing and the subsequent modification thereof. In my view, as revealed by the following analysis, the record does not support the findings upon which the sentencing judge based the lower court's jurisdiction to modify Husney's sentence.

1. *FINDING THAT HUSNEY WAS NOT REALLY INVOLVED WITH LUCAS.*

This finding is undermined by the graphic testimony before the grand jury. Husney's involvement with Lucas was substantial and continuing. By way of example, on at least two occasions these two men utilized Husney's residence to engage a

---

[3]Lucas was found guilty of sexual assault, open and gross lewdness and drug-related charges by a jury. He was sentenced to consecutive terms of life imprisonment with possibility of parole for sexual assault; one year in the county jail for open and gross lewdness; and a total of twenty-six years on the drug charges.

[4]The evidentiary base available to the district court at sentencing was a transcript of the grand jury proceedings reflecting the testimony of several minor children who were directly involved with Husney and Lucas, a psychiatric evaluation and a presentence report prepared by the Department of Parole and Probation.

[5]Mr. Koot is the Chief Deputy District Attorney of Clark County who argued on behalf of the State at the sentencing hearing.

13-year-old female child in acts of sexual conduct, both men participating simultaneously in cunnilingus and fellatio. Prior to the first such incident, Husney primed the child with alcohol while Lucas gave her a fourth of a quaalude. Husney even arranged gratuitous accommodations for the unsuspecting parents of their 13-year-old victim. There were other group sex orgies and nude photo-taking sessions involving the two men and girls ranging in age from 14 to 16 which again irrefutably attest to the commonality of conduct and association between the two men. The record also reveals Husney performing various acts in concert with Lucas to enhance the provocative appearance of one or more girls who were photographed in the nude by both men. In short, the evidence of record will simply not sustain the lower court's finding.

## 2. FINDING THAT 10-YEAR-OLD CHILD WAS NOT INVOLVED WITH HUSNEY.

This finding involves two aspects. First, the sentencing judge determined that the prosecutor unintentionally misled him into believing that Husney had included the 10-year-old child among his youthful sex objects. I have reviewed the prosecutor's sentencing argument and am satisfied that no such statement occurred. Indeed, Mr. Koot plainly declared that Husney "exercised his sexual aberrations on girls ranging from 13 years of age to 16 years of age, and when I refer to the thirteen-year-old girl, she was thirteen by about three months." Additionally, Husney's own attorney emphasized at the outset of his argument that Husney had not been sexually involved with the 10- or 11-year-old child, Sharon.[6] Furthermore, the grand jury transcript, reviewed by the district judge prior to sentencing, revealed no such involvement. Second, Husney *was* involved in promoting the corruption of this child by tolerating her presence during at least one photo session when he and Lucas were taking pictures of 15- and 16-year-old girls in semi-nude poses. He also was present when Sharon was given aspirin by Lucas to make her feel as important as the other girls who were receiving quaaludes. Additionally, Sharon had been in Husney's residence and waited downstairs with Lucas while Husney took her 13-year-old girl friend upstairs to his bedroom for sex. Sharon testified she had been to Husney's house two or three times, and, although she had not been subjected to sexual advances by Husney, she had been in Husney's bedroom and described the mirrors situated above his bed.

[6]Based on the child's birthdate and the dates when most of the events referred to in this opinion occurred, the child's age was 10 years. The district court expressed uncertainty as to whether the child was 10 or 11 years of age.

Again, the record does not reveal an actual basis for serious misinformation about Husney's role with Sharon and, in any event, the finding which would negate any involvement "what-soever" cannot stand for the reasons noted.

3. *FINDING THAT HUSNEY DID NOT HAVE PIC-TURES TAKEN WITH SHARON NOR WAS HE PRESENT WHEN ANY OTHER PICTURES WERE TAKEN.*

A fair reading of the prosecutor's comments would indicate that the district judge could have found that Husney was accused of having taken nude photographs of Sharon. On balance, however, the prosecutor did not single out Sharon by name or age as having been photographed by Husney. Furthermore, the record does reflect that Sharon was present with Husney and Lucas when each was taking photographs of semi-nude girls. The finding that Husney was not present when "any other pictures were taken" is not supported by the record. To the contrary, the record reflects substantial participation by Husney in photographing young girls in nude and semi-nude, provocative poses which he assisted in orchestrating.

4. *FINDING THAT NO DRUGS WERE SUPPLIED BY HUSNEY.*

There is simply no basis for this finding as a basis for mistake. The prosecutor provided no argument, expressly or impliedly, attributing the dispensing of drugs to Husney.[7] The grand jury transcript, however, reveals two instances when Husney prepared and served a mix of vodka and orange juice. The first such instance occurred at Husney's house immediately preceding the simultaneous and joint victimizing of the 13-year-old girl by Lucas and Husney. A second related occurrence found Husney serving such drinks to young girls ranging in age from 10 years to 17 years. Lucas also provided quaaludes to two of the girls. Thereafter, Husney took one of the girls, a 15-year-old, upstairs where they engaged in fellatio and intercourse. It is thus clear on the record that Husney did, in fact, aid and abet the dispensing of drugs to children by Lucas, and

---

[7] The majority cite Koot's comments that "in the sexual scenario which is the subject matter of the indictment before the Court, the same thing occurred preceding the sexual acts, photographs, qualudes [sic] and vodka," as intimating the furnishing of controlled pharmaceuticals by Husney to the victims. The referenced quotation, which was not objected to by either of Husney's attorneys, merely recited the factual circumstances which frequently—and with respect to the quaaludes invariably—occurred prior to the commencement of the felonious sex acts. The statement provided the context which the grand jury transcripts contained and which the district judge had read prior to sentencing Husney. Mr. Koot did not attribute to Husney the dispensing of the quaaludes, but the giving of the drug to the girls by Lucas was an integral part of the "sexual scenario" accurately depicted by Mr. Koot.

that he served alcohol to girls ranging in age from 10 years to 17 years. And it is equally clear that in both instances alcohol was provided by Husney in order to alter the mind-states of the girls as a prelude to his sexual plans.

5. *FINDING THAT PROSECUTOR'S ARGUMENT THAT HUSNEY WAS CERTAINLY INVOLVED WITH A 10 OR 11 YEAR OLD GIRL WAS UNINTENTIONAL.*

As previously noted, this finding is a non sequitur since the prosecutor did not fairly argue that Husney was sexually involved with the minor child of age 10 or 11 years.

6. *FINDING THAT DISTRICT COURT MISTAKENLY RELIED ON PROSECUTOR'S ARGUMENT INVOLVING HUSNEY WITH SHARON.*

The district court simply could not have misrelied on the prosecutor's argument involving Husney in sexual activity with 10-year-old Sharon since no such argument occurred. Moreover, the district court reviewed the grand jury transcript prior to the original sentencing, and it was apparent from the testimony of witnesses contained therein, including Sharon, that no such involvement occurred. Finally, Husney's attorneys also emphasized that Husney was not sexually involved with Sharon, and they obviously found no fault with Mr. Koot's representation since they interposed no objection on the subject.[8]

## THE DISTRICT COURT'S LEGAL CONCLUSION

After arriving at the foregoing findings, the sentencing judge concluded that, since there was a misstatement of facts, albeit unintentional, the district court was misled, thereby vesting jurisdiction in the court to entertain Husney's motion and suspend the sentence.

As the record stands, the district court has asserted jurisdiction to modify or correct Husney's sentence because of that court's mistaken belief regarding the facts hereinbefore recited.

---

[8] It is significant that the two able and experienced attorneys representing Husney at the original sentencing interposed no objections to any of the areas characterized by the sentencing judge and the majority of this Court as prosecutorial misrepresentations. The plea bargain agreement specifically granted defense counsel the right to "make objections as to relevancy, hearsay, etc. as to any argument or testimony proffered to the Court by Plaintiff at the time of sentencing." Having thus failed to object, this Court should give deference to the well established rule that, absent doubt regarding guilt, such failure will preclude appellate review of those matters concerning which objections were not raised. Kelso v. State, 95 Nev. 37, 44, 588 P.2d 1035, 1040 (1979), *cert. denied,* 442 U.S. 921 (1979). Such appellate restraint need not be exercised, of course, in the face of constitutional error, but if, indeed, any error exists in this case it does not remotely approach that magnitude.

Since the "mistaken" facts concerning Husney's sexual involvement with the minor child, Sharon, were not supported by the record, it must be assumed that the sentencing judge was the victim of his own misunderstanding on that subject. The other findings are, in my judgment, of no consequence since the facts assumed false by the district court are in fact true according to the record.

Turning now to the legal milieu applicable to this proceeding, Husney sought and obtained relief from the district court on the premise that the court had inherent power to correct a sentence based on material mistakes of fact. Such a proposition was asserted on the strength of this Court's decision in Warden v. Peters, 83 Nev. 298, 429 P.2d 549 (1967). There, we held that a district court has inherent power to vacate or modify its judgments and orders. Peters had entered a plea of guilty to a crime which he did not commit, and we found it within the inherent power of the district court to vacate the adjudication of guilt. Upon doing so, the judgment of sentence automatically collapsed and the defendant reverted to his status prior to the conviction. On at least two occasions, this Court, in dicta, has interpreted *Warden v. Peters* as allowing the modification of a sentence on the grounds that the sentence imposed was not provided for by statute. State v. Clark, 90 Nev. 144, 520 P.2d 1361 (1974); State v. District Court, 85 Nev. 485, 457 P.2d 217 (1969). I do not now recede from that reasoning. The imposition of an extra-statutory sentence is constitutionally infirm as a denial of due process, and is thus, by definition, illegal. The sentencing court retains inherent power to correct an unlawful sentence at any time. This inherent power has been legislatively recognized. NRS 176.555 provides, "The court may correct an illegal sentence at any time." *See* Anderson v. State, 90 Nev. 385, 528 P.2d 1023 (1974); Summers v. State, 90 Nev. 460, 529 P.2d 207 (1974). *See also* Hayes v. State, 175 N.W.2d 625 (Wis. 1970); State v. Shilinsky, 81 N.W.2d 444 (Iowa 1957); State v. Burkhart, 566 S.W.2d 871 (Tenn. 1978); People v. Emig, 493 P.2d 368 (Colo. 1972); State v. Fountaine, 430 P.2d 235 (Kan. 1967).

The inherent power of the district court to correct sentencing errors of constitutional magnitude is also legislatively endorsed under certain terms of Nevada's post-conviction relief statute. NRS 177.320.[9] Although Husney's motion for modification of

---

[9]NRS 177.320 provides:

> The jurisdiction of the district court in post-conviction relief hearings to find in favor of a petitioner is limited to those cases in which the court finds that there has been a specific denial of the petitioner's constitutional rights with respect to his coviction or sentence.

sentence was not characterized or procedurally organized as a petition for post-conviction relief, we may look to the substance of the motion as being in the nature of such a petition.[10] Warden v. Peters, *supra.* In any event, whether Husney's motion is viewed from the vantage point of the post-conviction relief statute or the inherent jurisdiction of the district court, the standard remains the same, viz, was the alleged mistake in sentencing the result of an error of constitutional dimension.[11]

The relief available under the authorities announced above applies irrespective of whether a defendant has commenced serving his sentence. Absent constitutional error, however, a district court is without jurisdiction to suspend the sentence of a defendant after a judgment of conviction has been signed by the judge and entered by the clerk pursuant to NRS 176.105. Miller v. Hayes, 95 Nev. 927, 604 P.2d 117 (1979). The latter restriction on the jurisdication of a sentencing court is legislatively fixed by the terms of NRS 176.185(4): "The court shall not suspend the execution of a sentence of imprisonment after the defendant has begun to serve it."[12] The import of this statute is clear. Once a defendant has commenced serving his sentence the district court is without jurisdiction to thereafter suspend it, except, as stated, where the sentence is the product of a denial of constitutional rights.

The foregoing observations distill to the task of determining whether, under the circumstances here present, NRS 176.185(4) deprived the district court of jurisdication to grant Husney relief. The United States Supreme Court has held that, where a

---

[10]We note that NRS 177.375(1) states:

"If a petitioner's conviction was upon a plea of guilty, all claims for post-conviction relief are waived except the claim that the plea was involuntarily entered."

This statute does not prohibit Husney from making a post-conviction challenge to his sentence. The terms of the statute suggest that the waiver of "all claims" concerns only claims regarding the conviction itself, and not the imposition of sentence. Where a sentence is based upon grounds which are constitutionally infirm, even though a guilty plea has been entered, a petitioner is not precluded by NRS 177.375(1) from challenging the imposition of that sentence on constitutional grounds through a motion for post-conviction relief.

[11]Absent good cause shown for delay, relief under the post-conviction relief statute is available only if sought within one year of final judgment or one year after a final decision on appeal. NRS 177.315(3). Relief accorded by exercise of the inherent power of the district court is not so limited and may be pursued at any time by means of habeas corpus. State *ex rel.* Orsborn v. Fogliani, 82 Nev. 300, 417 P.2d 148 (1966).

[12]When Husney's sentence was modified, the referenced statute was included as part of NRS 176.185(3).

defendant is sentenced on the basis of extensively and materially untrue assumptions concerning his criminal record, the constitutional demands of due process are not satisfied. Townsend v. Burke, 334 U.S. 736 (1948). The court went on to note that its holding was not related to the severity of the sentence, but rather the pronouncement of sentence "on a foundation . . . extensively and materially false." *Id*. at 741. In Lloyd v. State, 94 Nev. 167, 576 P.2d 740 (1978), we held that a sentencing court pronouncing sentence within the statutory limits will not be found to have abused its discretion unless the sentence is based upon information or accusations stemming from facts "supported *only* by impalpable or highly suspect evidence." *Id*. at 170, 576 P.2d at 742 (emphasis supplied).

Although the *Lloyd* decision involved an abuse of discretion issue, the criteria for finding such an abuse is equally applicable to the *Townsend* situation involving a denial of due process in sentencing. If the sentencing court pronounces a statutorily proper sentence in reliance upon information or accusations supported only by false, impalpable or highly suspect evidence, due process has failed and the district court has jurisdiction to modify, suspend or otherwise correct such a sentence.

Similarly, if the sentencing court extensively and materially misperceives a fundamentally accurate informational or evidential base, and the sentence is the product of, or infused with, such misperception, the district court may modify, suspend or otherwise correct such a sentence.

We are thus left with the question of the nature of the mistake which induced the sentencing judge to modify Husney's original sentence. For reasons previously stated, the original sentence was not the product of reliance upon information and accusations which were supported to any degree by false, impalpable or highly suspect evidence. The prosecutor's comments at sentencing were not distortive of the facts and were substantially supported by the record of the grand jury proceedings.

The sentencing court likewise did not extensively and materially misperceive the information available to it prior to the original sentencing. As outlined in *Townsend,* mere misperceptions do not serve as a basis for constitutional challenge. Rather, as mentioned above, the constitutional standard under which a judge's misunderstanding should be examined is whether it is of such a magnitude as to render the entire foundation upon which sentencing is based extensively and materially false. Such is not the case here. While I do not question the

bona fides of the sentencing judge in his belief that he was unintentionally misled, any such misperception by the district court in the instant case did not rise to the level of constitutional magnitude.

The sentence first pronounced was within the limits of the applicable statute. Under the circumstances here present, the prohibition of NRS 176.185(4), if it is to have any life at all, must apply. The fact that the sentencing judge later found the original sentence unduly harsh or even unwarranted under a greater subsequent enlightenment or clarification does not vitiate the command of the statute.[13] Such circumstances may be argued within the confines of the legislative scheme for pardons or parole. As we said in State v. District Court, 85 Nev. 485, 457 P.2d 217 (1969):

> In this state the granting of any relief from punishment after incarceration in the state prison is an executive function authorized by the legislature and performed by the state board of parole commissioners . . . or by the state board of pardons commissioners.

*Id.* at 488, 457 P.2d at 218.[14] In harmony with our holding in

---

[13]The concurring opinion by Brennan, D. J., if followed, would selectively abrogate NRS 176.185(4). The sound requirement of an extensively and materially false record or misapprehension by a sentencing judge would be eliminated and supplanted by an undefinable standard which would admit of any qualitative or quantitative reconsideration by the judge. Sentences could be restructured by a judge later concluding that he focused too heavily on one aspect of a case and too little on another. Imaginative defense counsel could return again and again in an endeavor to circumvent formal parole or pardon procedures and requirements by attempting to convince the sentencing judge that the sentence was unduly and unfairly harsh because of misperceptions, misunderstandings or misplaced emphasis. Subjective considerations could supplant an extensively and materially false perception or evidential base as justification for sentence modification. The law aside, such latitude in resentencing after a defendant has commenced serving his original sentence would not bode well for a criminal justice system which appears to be moving away from greater judicial discretion in sentencing.

[14]Interestingly, Zenoff, J. writing for the majority in State v. Clark, 90 Nev. 144, 520 P.2d 1361 (1974) concluded that a district court was without jurisdiction to modify the sentence of defendant Clark under circumstances far more compelling than the instant case. There, the sentencing judge erroneously interpreted the policy of the Board of Parole Commissioners and fashioned the sentencing in accordance with his misperception. The district judge declared that he intended the defendant to serve one year in prison and thereafter receive the benefit of continuing guidance and supervision while on parole status. Upon discovery that his understanding of the board's policy was incorrect, and that Clark would have to serve time never intended by the judge on the occasion of Clark's sentencing, the judge sought vainly to modify the sentence to comport with the court's original intention. There we held such relief could be properly sought only before the State Board of Pardons Commissioners.

the latter case, I unhesitatingly conclude that the action of the district court in suspending Husney's sentence constituted a judicial invasion or intrusion into the legislative and executive realms, in contravention of Article 3, Section 1 of the Nevada Constitution.

My brethren in the majority summarize their opinion by again alluding to the prosecutor's unintended misrepresentations which, they conclude, provided the sentencing judge with a materially untrue foundation upon which to sentence Husney. My repeated review of the record has revealed no basis for the prosecutor's role as scapegoat. His argument was forthright and founded on a reliable evidential base. Husney's counsel obviously agreed at sentencing for they found no basis for objection between the two of them.[15]

---

[15]The majority suggests that if the State's petition were allowed, credence would thereby be placed on the sworn testimony taken in the grand jury proceedings, and Husney would be precluded from arguing that his sentence was based, at least in part, on impalpable or highly suspect evidence. It is necessary to refocus on the fact that Husney entered a voluntary guilty plea to one of ten felony counts in consideration of the State's dismissal of the remaining counts. At sentencing, Husney readily admitted that he had no defense to the crime which constituted the subject of his plea. In accordance with the plea bargain, the State was allowed to argue at the time of sentencing. Mr. Koot made it clear that he was relying on the grand jury transcripts which supported his factual recital. Husney's combined counsel made no suggestion that the transcript constituted unreliable testimony, let alone evidence that was "impalpable or highly suspect." Indeed, the sentencing judge never suggested that the transcript of the grand jury's proceedings was unworthy of belief or suspect to any degree. I therefore find it strange that this Court, *sua sponte*, raises such an implication concerning the transcript. It is well settled that a court may rely on information which would not even qualify for admission at trial so long as the information is not impalpable or highly suspect. As we said in Silks v. State, 92 Nev. 91, 93-94, 545 P.2d 1159, 1161 (1976), "The sentencing proceeding is not a second trial and the court is privileged to consider facts and circumstances which clearly would not be admissible at trial. . . . So long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence, this Court will refrain from interfering with the sentence imposed." (Citations omitted.)

An analysis of the grand jury proceedings presents no basis for concluding that the testimony of the young girls victimized by Lucas and Husney was impalpable or highly suspect. In any event, as the United States Supreme Court observed in Townsend v. Burke, 334 U.S. at 740, "Counsel, had any been present, would have been under a duty to prevent the court from proceeding on . . . false assumptions and perhaps under a duty to seek remedy elsewhere if they persisted." As noted previously, the two attorneys representing Husney made no objection to either the argument of the prosecutor in the areas at issue or the reliability of the transcript of the grand jury testimony. To the contrary, the primary thrust of defense counsel's argument was that the girls were teenaged prostitutes, and that Husney and other adult males (other than Lucas) who had engaged them in sex were greater victims than the girls.

As the majority observed, after Mr. Koot's argument at the original sentencing, the district judge indicated that he had read the grand jury transcript and had come to the conclusion that Husney had committed "a great wrong." The content of that transcript has not changed. Even if we assume, *arguendo,* that the sentencing judge was misled into believing that Husney was involved in direct sexual contact with a 10- or 11-year-old child, I suggest that does not materially lessen the "great wrong" committed by Husney with a child barely beyond the age of twelve. Nor does it lessen the wrong committed with 14- and 15-year-old girls. Moreover, the great wrong is not substantially lessoned by a misperception concerning the dispensing of quaaludes to the young girls. Husney did provide them with alcohol, he encouraged by his unprotesting presence, the consumption of the quaaludes by the girls, and he accepted the advantage of their drug-induced condition by exploiting them sexually. Furthermore, a misperception as to whether Husney took nude photographs of Sharon does not materially lessen the great wrong involved in taking nude and lewd photographs of the other minor children and semi-nude photographs in the presence of Sharon. Finally, the grand jury transcript trumpets loudly the degree of Husney's involvement with Lucas. Although the majority ascribe the term "partners" to the prosecutor's description of the relationship between the two men, Mr. Koot never once used that term. He did say that Lucas and Husney were "almost a team." He also said that Husney "stands alone with Mr. Don Lucas" and apart from others who had been previously sentenced. My reading of the record reveals no hyperbole by Mr. Koot. In any event, I fail to find a basis for concluding that a misperception by the sentencing judge as to the extent of the relationship between the two men was extensively or materially false. Nor do I find any basis for concluding that the original sentence, which was within the statutory limits, and which applied only to one of the many "great wrongs" committed by Husney, was unfair or unduly harsh.

In my opinion, Mr. Koot should not bear the brunt of the State's frustration over the loss of its reasonable entitlements under the plea bargain.

For the reasons stated above, I dissent from the position of my breathren in the majority, and submit that the State was entitled to have this Court order the reinstatement of Husney's original sentence.