[No. A033980. First Dist., Div. Three. May 29, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ANDREW JACKSON, et al., Defendants and Appellants.

**COUNSEL**

Gary V. Crooks and George O. Benton, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Thomas A. Brady and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—Appellants James Andrew Jackson (James) and Marvin Ray Jackson (Marvin) were convicted by a jury of burglary. (Pen. Code, § 459.) In a bifurcated proceeding, the trial court found that each had committed the offense while released from custody on bail pending trial on an earlier felony offense, in violation of section 12022.1.[1] Both appellants contend the evidence does not support the court's finding on the section 12022.1 allega-

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

tions. James contends the court erred by editing his spontaneous statement to police to eliminate its exculpatory content. In addition, James contends the trial court committed sentencing error.

FACTS

In the early afternoon of August 1, 1985, Frank Harsh of the Sonoma County Sheriff's Office, who was on duty in a marked patrol vehicle, was directed by the dispatcher to 2110 Corby Avenue. When he located the address, he saw a white Toyota sedan, occupied by four men, leaving the driveway. He turned on his red light and followed the car, which stopped at a stop sign, then turned right and entered a freeway onramp. The car stopped briefly on the onramp; two of its passengers got out and ran west, away from the freeway. One of the passengers was wearing a grey sweatshirt with red stripes.

The Toyota then accelerated rapidly and sped along the right shoulder of the freeway. The officer pursued the vehicle, using his lights and siren. The Toyota left the freeway at the next offramp, where it turned over on its side. The other two men climbed out of the car and ran.

Several officers joined in a search for all four men. A highway patrol officer discovered appellant James Jackson crouched in a field near the freeway. As the officer led James back to the accident scene, James said he was the driver of the vehicle. James made other statements to the officer which were not admitted into evidence, but which will be discussed *infra*. Later, after James was advised of and waived his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974]), an officer told James he thought there was stolen property in the trunk of the car and asked James if he could search the trunk. James gave permission for the search, stating that he did not want any stolen property in his car. In the trunk were several items stolen that day from a residence at 2100 Corby Avenue.

About 30 minutes later, appellant Marvin Jackson was discovered in the bathroom at 2110 Corby Avenue, a residence which was otherwise vacant. Marvin was wearing a grey and red sweatshirt. Another item of property stolen from 2100 Corby was recovered from the toilet in that bathroom. Another individual, Vincent Williams, was arrested about 200 yards from the scene of the accident; stolen items were found in the immediate area of his arrest. The two Jacksons and Williams were charged with burglary of 2100 Corby, but Williams was not tried with appellants.

ADMISSIBILITY OF JAMES'S EDITED EXTRAJUDICIAL STATEMENT

As already stated, when James was being taken back to the accident scene, he told the officer that he was the driver of the car. In addition, James said

that he had seen some friends on CorbyAvenue and stopped to pick them up. When the sheriff's vehicle appeared behind him, the friends told him "to go for it" and then made him wreck the car. James also said that he did not know anything about any burglary. All these *statements were made* before James was given *Miranda* warnings and before the officer asked James any questions. James had been told that the sheriff's office wanted to talk to him, but not why he was being detained.

Initially, the trial court ruled that all of the statements were spontaneous and admissible. Thereafter, Marvin objected to admission of the statements on *Aranda* grounds. (*People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265].) The trial court then ruled that while James's comment that he was driving the car was admissible, his statement that he had picked up some friends was inadmissible because it would implicate Marvin. As for James's comment that he did not know anything about any burglary, James himself objected to its admission as long as the statement about picking up friends was being excluded. The trial court agreed with James, and remarked that the People had elected to try the two men together and had to accept the consequences of that decision. The court ruled that only the statement that James was driving the car would be admissible.

■ Relying on *People* v. *Aranda, supra,* 63 Cal.2d 518, James now contends that he was prejudiced because the court excised the portions of his statement which exculpated him. In *Aranda,* the Supreme Court proclaimed that when the prosecution proposes to introduce an extrajudicial statement of one defendant which implicates a codefendant, the trial court has three alternatives. First, it can allow a joint trial if all parts of the extrajudicial statement implicating the codefendant can be and are effectively deleted without prejudice to the declarant. Second, it can grant a severance of trials if the prosecution insists that it must use the statement and effective deletions cannot be made. Third, if the prosecution has successfully resisted a motion for severance and thereafter offers an extrajudicial statement implicating a codefendant, the court must exclude it if effective deletions are not possible. (*Id.,* at pp. 530-531.)

While James objects to how the court edited his statement, it is not entirely clear what he believes the court should have done. James does not argue that his entire statement should have been excluded. He seems to concede that the decision to hold a joint trial is not at issue here, as neither appellant ever moved for severance. (See *People* v. *Cornejo* (1979) 92 Cal.App.3d 637, 659 [155 Cal.Rptr. 238] [defendant who does not move for severance in trial court may not contend on appeal that severance should have been granted].) If James's argument is that the court should not have edited his statement

at all, the argument is without merit. To avoid improperly prejudicing code-fendant Marvin, the court was compelled to exclude James's statement that he was merely driving along Corby and picked up some friends. Further-more, the court edited out the statement that James knew nothing about any burglary at James's own request; thus he cannot now complain about that aspect of the ruling. We find no error in the court's editing of James's state-ments.

*People* v. *Fulks* (1980) 110 Cal.App.3d 609 [168 Cal.Rptr. 203], upon which James relies, does not alter our conclusion. In that case, after their arrests three defendants made statements, each exculpatory but each different. The prosecution sought admission of the conflicting statements on the theory that together they demonstrated consciousness of guilt. Defen-dants argued that the statements should be excluded or their trials severed. Instead, the trial court admitted all the statements after editing them to elim-inate the conflicts. (*Id.,* at pp. 614-615.) The appellate court reversed. It reasoned that although technically not in conflict, the edited statements could be reconciled only "by laborious flights of imagination"; thus their incriminating effect was not dissipated. (*Id.,* at pp. 617-618.) While *Fulks* may stand for the broad proposition that under certain circumstances even an edited statement should not be admitted, the case does not support James's contention that admission of his edited statement was error in this case.

### Section 12022.1 Enhancements

After the jury trial on the burglary charges, the trial court found that James had committed the instant burglary while released from custody pending trial on an earlier felony, in violation of section 12022.1; it also found that Marvin had committed the burglary while trial was pending on two earlier felonies. The court's findings were based on the evidence that on the morning of August 1, 1985, both appellants entered slow pleas to charges in another action by submitting their case for decision on the transcript of the prelimi-nary hearing and the police reports. That afternoon, they were arrested for the burglary at issue in this case.

The version of section 12022.1 in effect at the time of appellants' offenses provided in pertinent part that any person "convicted of a felony offense which was committed while that person was released from custody on bail ... *pending trial* on an earlier felony offense" was subject to a two-year enhancement if convicted and sentenced to state prison for both offenses. (Italics added.) ▮ Appellants contend that the enhancement allegations were improperly found to be true. They reason that their slow pleas were equivalent to guilty pleas; thus even though they had not been sentenced on

the earlier offenses, their guilt had been determined and trial was not pending when they committed the burglary.

When appellants' opening briefs were filed, there was some disagreement in the Courts of Appeal as to whether former section 12022.1 applied to a person who had pled guilty to a felony and then committed another felony while out on bail awaiting sentencing. Subsequently the Supreme Court resolved that issue, holding that the words "pending trial" referred to the period prior to the determination of guilt and did not include the period between the determination of guilt and judgment or execution of judgment. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288].)[2]

Nevertheless, we cannot agree with appellants' contention that their slow pleas were equivalent to a determination of guilt, so that their trials were no longer pending. Appellants ignore the significant differences between slow pleas and guilty pleas.

A slow plea has been defined as " 'an agreed-upon disposition of a criminal case via any one of a number of contrived procedures which does not require the defendant to admit guilt but results in a finding of guilt on an anticipated charge and, usually, for a promised punishment.' " (*People* v. *Wright* (1987) 43 Cal.3d 487, 496 [233 Cal.Rptr. 69, 729 P.2d 487].) Perhaps the most obvious example of the slow plea is a bargained-for submission on the preliminary hearing transcript, in which the only evidence is the victim's credible testimony, defendant does not testify, and counsel presents no argument on defendant's behalf. (*Ibid.*)

It is true that slow pleas have been equated with guilty pleas insofar as the record of either must show explicit advisements and waivers of constitutional rights. (See *In re Mosley* (1970) 1 Cal.3d 913, 926, fn. 10 [83 Cal.Rptr. 809, 464 P.2d 473]; *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 602-603 [119 Cal.Rptr. 302, 531 P.2d 1086].) In addition, slow pleas are similar to guilty pleas in that in both instances, omissions of the self-incrimination advisement and waiver are per se reversible (see, e.g., *People* v. *Levey* (1973) 8 Cal.3d 648, 652-654 [105 Cal.Rptr. 516, 504 P.2d 452]), whereas such an omission is subject to the *Watson* test of prejudice if guilt is contested after submission on the transcript. (*People* v. *Wright, supra,* 43 Cal.3d at pp. 493-495.)

---

[2]As amended in 1985, section 12022.1 now provides for a two-year enhancement for any person arrested for a "secondary offense" alleged to have been committed while that person was released from custody on a "primary offense." "Primary offense" is defined as a "felony offense for which a person has been released from custody on bail... *prior to the judgment becoming final, including the disposition of any appeal.* . . ." (Italics added.)

However, a slow plea is not the equivalent of a guilty plea for all purposes. (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d at p. 603.) In *Bunnell,* the court explained that a defendant who submits his case on the preliminary hearing transcript agrees that the transcript may be considered instead of the personal testimony of those witnesses who appeared at the preliminary hearing. Such a defendant's trial is " 'entered upon' " when the stipulation to submit the case is accepted by the trial court, even if conviction is a foregone conclusion. (*Id.,* at pp. 602-603.) But an agreement to submit a case for decision on the transcript does not supersede the plea of not guilty previously entered, and the People must still assume the burden of proving guilt beyond a reasonable doubt. (*Id.,* at p. 603.) Furthermore, the trial court must determine on the record the question of guilt presented on a stipulated transcript. It must weigh the evidence in the transcript and convict only if it is persuaded beyond a reasonable doubt of the defendant's guilt. (*People* v. *Martin* (1973) 9 Cal.3d 687, 694-695 [108 Cal.Rptr. 809, 511 P.2d 1161].) In short, when the defendant enters a slow plea, his or her trial remains pending until the trial court makes a finding on the question of guilt.

■ When appellants entered their slow pleas on the morning of August 1, 1985, the court stated that it had not yet read the documents and put the matter over until August 8 for its ruling. No determination of guilt was made on the morning of August 1. Thus trial on those offenses was still pending when appellants were arrested that afternoon, and the court in this case properly found the enhancement allegations to be true.

### THE RESENTENCING

On December 19, 1985, the court sentenced James as follows. He had been previously sentenced to the aggravated term of three years for his conviction in case No. 13069-C. The court in this case designated that term as the principal term. It then imposed the middle term of four years for the burglary in the instant case, and designated that term the subordinate term. It sentenced James to a principal term of three years, plus a subordinate term of sixteen months (one-third the middle term of four years), plus two years for the section 12022.1 enhancement, all to be served consecutively, for a total of six years and four months.

On the same day, the court sentenced Marvin as follows. He had been previously sentenced in case No. 12313-C to a four-year term, which the court in this case designated as the principal term. As subordinate terms, it imposed two 8-month terms for cases Nos. 13069-C and 13107-C, plus sixteen months for this case (one-third the middle term of four years), plus two years for a section 12022.1 enhancement, all to be served consecutively. The total term imposed was eight years and eight months.

The following day the court resentenced both appellants, after being informed that it had violated the double-the-base-term limitation of section 1170.1, subdivision (g). To remedy its error, the court designated the four year middle terms which it had imposed for the instant burglaries as the principal terms, and designated the terms imposed in the earlier cases as the subordinate terms. As a result, James received a longer aggregate term of six years and eight months instead of six years and four months; Marvin received a shorter aggregate term of eight years and four months rather than eight years and eight months.

James attacks the resentencing on several grounds. We first consider his contention that former section 12022.1 itself established the sequence in which consecutive sentences imposed pursuant to its requirements had to be served, and that the court's resentencing did not comply with that sequence.

Subdivision (a) of former section 12022.1 provided in pertinent part, "If the person is convicted of a felony for the earlier offense, is sentenced to state prison for the earlier offense, and is convicted of a felony for the later offense, *any state prison sentence for the later offense shall be consecutive to the earlier sentence.*" (Stats. 1982, ch. 1551, § 2, p. 6050.)[3] Relying on the underscored language, James argues that the resentencing was improper because the sentence on the later offense was to be served first rather than *consecutive to* the earlier offense.

Read in isolation, section 12022.1 does seem to dictate the sequence for the consecutive sentences which it requires. However, this court cannot read the section out of context, ignoring the other provisions of the Penal Code governing consecutive sentencing. When a penal provision is part of a general legislative scheme, it must be construed with reference to the entire scheme, so that harmony may be achieved among the parts. (*People* v. *Waite* (1983) 146 Cal.App.3d 585, 590 [194 Cal.Rptr. 245.) In addition, the basic rule in interpreting statutes is that a court should ascertain the intent of the Legislature so as to effectuate the law's purpose. (*People* v. *Overstreet, supra,* 42 Cal.3d 891, 895.) Consideration must be given to the consequences of a particular interpretation; the apparent purpose of a statute will not be sacrificed to a literal reading of its language. A practical construction is required when a technical construction would lead to "mischief or absurdity." (*Stanley* v. *Justice Court* (1976) 55 Cal.App.3d 244, 253 [127 Cal.Rptr. 532].)

---

[3]As amended in 1985, section 12022.1 contains similar language: "If the person is convicted of a felony for the primary offense, is sentenced to state prison for the primary offense, and is convicted of a felony for the secondary offense, *any state prison sentence for the secondary offense shall be consecutive to the primary sentence.*" (*Id.,* subd. (e); italics added.)

James's reading of section 12022.1 ignores section 1170.1, which sets forth "the general sentencing scheme for multiple convictions." (*People v. Belmontes* (1983) 34 Cal.3d 335, 343 [193 Cal.Rptr. 882, 667 P.2d 686].) Subdivision (a) of section 1170.1 proclaims the basic rule that when a person is convicted of multiple felonies, "the total sentence consists of (1) the principal term, (2) the subordinate term, and (3) any enhancements for prior convictions." (*People v. Tassell* (1984) 36 Cal.3d 77, 90 [201 Cal.Rptr. 567, 679 P.2d 1].) Subdivision (a) also states unambiguously: "*The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes* .... The subordinate term for each consecutive offense which is not a 'violent felony' ... shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction. ..." (Italics added.) When the Legislature has intended to create an alternative consecutive sentencing scheme to that of section 1170.1, it has clearly so indicated. (See § 667.6, subd. (c): "*In lieu of the term provided in Section 1170.1,* a full, separate, and consecutive term may be imposed. ..." (Italics added.) No similar language appears in section 12022.1.

"The purpose of section 12022.1 is to meet public concern over offenders who are arrested then allowed back on the street a short time later only to commit more crimes. [Citations.] Section 12022.1 deters this conduct ...." (*People v. Lewis* (1986) 185 Cal.App.3d 923, 927 [230 Cal.Rptr. 115].) James's reading of section 12022.1 is irreconcilable with that legislative purpose, as it could often result in a more lenient sentence than that which would result from the application of section 1170.1.

We also note that at the same time it enacted section 12022.1, the Legislature amended section 1170.1 to provide that when consecutive terms are imposed, "the aggregate term of imprisonment ... shall be the sum of the principal term, the subordinate term and *any additional term imposed pursuant to Section ... 12022.1.*" (Stats. 1982, ch. 1551, § 1.5, p. 6048, italics added.) With respect to the imposition of that additional term, subdivision (a) of section 12022.1 plainly stated: "... the sentence *for the later offense* shall be enhanced by an additional term of two years." (Italics added.) Read literally, that language seems to mean that the enhancement for prior convictions (such as § 12022.1 enhancements) attaches to the later offense. Nevertheless, the Supreme Court has stated, "section 1170.1, subdivision (a) ... makes it very clear that enhancements for prior convictions [such as section 12022.1 enhancements] *do not attach to particular counts* but instead are added just once as the final step in computing the total sentence." (*People v. Tassell, supra,* 36 Cal.3d at p. 90, fn. omitted, italics added.) The apparent disparity between the two sections was not at issue in *Tassell,* but its analysis of section 1170.1 is consistent with a conclusion that the literal language of section 12022.1 is not controlling when it conflicts with section 1170.1.

In sum, we conclude that the Legislature did not intend to alter the consecutive sentencing scheme of section 1170.1 when it enacted section 12022.1. It simply intended the sentences on the earlier and the later offenses to be served consecutively, with the principal and subordinate terms designated according to section 1170.1.

■ We next consider James's contention that the court acted in excess of its jurisdiction by vacating the judgment and imposing a new, harsher sentence.

The Attorney General points out that the sentence originally imposed on James suffered from a flaw more fundamental than a violation of the double-the-base-term rule. As we have already discussed, section 1170.1 sets forth the general sentencing scheme for multiple convictions, and mandates that the principal term shall consist of the greatest term of imprisonment imposed for any of the crimes.

Despite that mandate, when the trial court in this case initially sentenced James, it designated as the principal term the three-year term imposed for his earlier conviction rather than the greater four-year term imposed for the instant burglary. In other words, that initial sentence was an unauthorized sentence. "Such a sentence is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement." (*People* v. *Serrato* (1973) 9 Cal.3d 753, 764 [109 Cal.Rptr. 65, 512 P.2d 289], fn. omitted (overruled on other grounds in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144]).) While the trial court did not recognize the real defect in the original sentence and resentenced James for the wrong reasons, it is the court's action, not its reasoning, which we must review. Because the original sentence imposed on James was unauthorized, resentencing was required, even though it resulted in a slightly longer term of imprisonment.

*People* v. *Drake* (1981) 123 Cal.App.3d 59 [176 Cal.Rptr. 186] upon which James relies, does not hold otherwise. In that case defendant pled guilty to multiple robbery counts. The trial court imposed the middle term of three years for one offense, and designated it as the principal term, and then added several consecutive subordinate terms, for a total term of ten years. Later, after concluding that the sentence violated the double-the-base-term rule, the court resentenced defendant, in part by imposing the upper term instead of the middle term for the offense designated as the principal term. In justification, the court explained that its original intention was to impose a 10-year total term. The appellate court concluded the trial court had no power to resentence defendant to a term greater than six years. The trial court's initial

pronouncement of sentence, including the imposition of the middle term, was a judicial act. If that act resulted in an aggregate term which by operation of law was not what the court intended, the error was judicial, not clerical. The court had no jurisdiction to revise its judgment by imposing the upper term. (*Id.,* at pp. 63-64.)

*Drake* is readily distinguishable from the instant case. In *Drake,* the middle term originally imposed was authorized by law; thus the court was without jurisdiction to later change that term. In contrast, in this case the initial sentence imposed on James was unauthorized, as the court failed to select the greatest term of imprisonment as the principal term.

▪ James's alternative contention that the resentencing violated double jeopardy principles is without merit. When a trial court has pronounced an unauthorized sentence, double jeopardy is no bar to the imposition of a proper sentence, even though the latter is more severe than the former. (*People* v. *Serrato, supra,* 9 Cal.3d at p. 754, 763-764; *People* v. *Price* (1986) 184 Cal.App.3d 1405, 1408-1409 [229 Cal.Rptr. 550].)

Marvin's resentencing resulted in a *reduction* of his term from eight years and eight months to eight years and four months, and he does not challenge that resentencing. Nevertheless, the Attorney General points out that Marvin's sentence still violates the double-the-base-term rule by four months and requests that his sentence be modified to stay that portion of his sentence in excess of eight years.

### DISPOSITION

The judgment against appellant Marvin Jackson is modified to stay that portion of his sentence in excess of eight years. In all other respects, the judgments are affirmed.

Barry-Deal, J., and Merrill, J., concurred.

Modified as printed above following recall of remittitur on October 30, 1987, and a petition for a rehearing was denied. The petition of appellant James Andrew Jackson for review by the Supreme Court was denied January 21, 1988.