DAVID PATRICK STALEY, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 19599

February 22, 1990

787 P.2d 396

*James E. Mayberry,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex A. Bell,* District Attorney and *James Tufteland,* Chief Deputy District Attorney, *Bradford R. Jerbic,* Deputy, Clark County, for Respondent.

---

## OPINION

By the Court, YOUNG, C. J.:

This is an appeal from amended judgments of conviction modifying appellant's sentences.

On June 9, 1988, appellant entered guilty pleas to two counts of burglary in District Court Case Nos. C82921 and C82931. In return for the guilty pleas, the State agreed to dismiss seventeen additional counts of burglary then pending against appellant. Further, the State indicated that it would seek a determination from the district court that appellant was a habitual criminal based on three prior felony convictions, and would argue for consecutive life sentences as a result of the two burglary convictions. Appellant agreed to stipulate to "major habitual criminal status." *See* NRS 207.010(2) (person convicted of felony who has three or more prior felony convictions and is adjudged a habitual criminal by the district court "shall be punished by imprisonment in the State prison for life with or without possibility of parole").

On July 28, 1988, a sentencing hearing was held on the two burglary convictions. Counsel for appellant indicated to the district court that two of the prior convictions relied on by the State had been charged in a single indictment in New York and arose out of a single criminal episode.[1] Counsel therefore argued that these two convictions constituted only one prior conviction for purposes of enhancement under the habitual criminal statute. *See* Halbower v. State, 96 Nev. 210, 211-212, 606 P.2d 536, 537 (1980) ("where two or more convictions result from the same act, transaction or occurrence, and are prosecuted in the same indictment or information, those several convictions may be

---

[1]Appellant attempted to enter a house, but was unsuccessful. Appellant proceeded down the street and attempted to enter a second house, but was arrested before entering. Appellant pleaded guilty to two counts of attempted burglary which were charged in a single criminal information.

utilized only as a single prior conviction for purposes of the habitual criminal statute''); *see also* Rezin v. State, 95 Nev. 461, 463, 596 P.2d 226, 227 (1979) (purpose of recidivist statute is ''to discourage repeat offenders and to afford them an opportunity to reform''). Counsel suggested that appellant could only be sentenced under ''the little habitual criminal statute.'' *See* NRS 207.010(1) (person adjudged a habitual criminal with two prior felony convictions may be sentenced to ''not less than 10 years nor more than 20 years''). The record does not indicate that the State responded to or contradicted these arguments.[2] Defense counsel further argued that appellant should be treated leniently under all of the circumstances.

The district court sentenced appellant to twenty years in prison for each of the burglaries, the sentences to run consecutively.[3] Judgments of conviction were entered on August 23, 1988.

More than seven weeks later, on October 13, 1988, the State filed a motion in the district court to modify appellant's sentences or, in the alternative, to set appellant's guilty pleas aside. Based on its interpretation of *Halbower* and *Rezin,* the State argued that defense counsel's representations that appellant could be sentenced to only twenty years was legally incorrect. Representing that life sentences were a part of the plea bargain, the State argued that appellant should be resentenced to life terms or that the pleas should be set aside based on appellant's failure to honor his part of the plea bargain by stipulating to major habitual criminal status. Appellant opposed the motion.

Following a hearing, the district court concluded that life sentences had been a part of the plea bargain. The district court therefore granted the State's motion to resentence appellant and sentenced appellant to consecutive life terms with the possibility of parole. Amended judgments of conviction imposing life sen-

---

[2]A discussion was held off the record, at which the State may have challenged defense counsel's arguments. Following this discussion, however, defense counsel again argued that only the lesser penalty of NRS 207.010(1) applied. The State did not indicate on the record that it disagreed with counsel's arguments.

[3]The district court's sentence appears to be based on an exercise of discretion and leniency, rather than on any interpretation of the law under *Halbower.* Specifically, the district court noted that appellant was ''not dumb,'' that in light of his record he would have to serve ''some jail time,'' that maybe appellant could ''turn it around,'' and that the district court would ''follow the recommendation of the defense counsel.'' At no time did the district court indicate that it was sentencing appellant under the little habitual criminal statute, as opposed to the major habitual criminal statute. The district court gave appellant the maximum penalty allowed by law under the little habitual criminal statute.

tences were entered on November 3, 1988, and this timely appeal followed.[4]

In the court below, the State argued that appellant should be resentenced to life terms pursuant to the plea bargain. The district court essentially granted the request for specific performance of the plea bargain. On appeal, appellant contends that the district court erred because the term of appellant's sentence was not a part of the plea bargain. We agree.

A person cannot stipulate to a status. The question of the validity of the prior convictions must be determined by the district court as a matter of law; the punishment which follows is dependent on the number of valid prior convictions. Further, the district court has discretion not to impose a penalty under the habitual criminal statutes regardless of the number of valid prior convictions. *See* French v. State, 98 Nev. 235, 645 P.2d 440 (1982). Similarly, it is within the discretion of the district court to sentence a defendant under the little habitual criminal statute rather than the major habitual criminal statute if the circumstances so warrant. That appears to be precisely what the district court originally did in this case.

The matter of sentencing was left to the discretion of the district court. Both appellant and the State were informed at the time the plea was entered that the district court had sole discretion to impose an appropriate sentence. Both appellant and the State were fully aware that the sentence might be anywhere from one year to life without the possibility of parole. Thus, the State is wrong in its contention that the plea bargain required that the district court impose a life sentence.

Further, the State's assertion that appellant agreed to a life sentence as part of the plea bargain is incorrect. Although appellant indicated that he would stipulate to major habitual criminal status, the district court had jurisdiction to impose a wide range of punishments under "major habitual criminal status," and appellant certainly hoped at the time he entered his plea that the district court would show mercy. The State's unilateral belief, and even expectation, that the district court would impose a term of life as a result of the plea is not sufficient to establish that a life sentence was a part of the bargain. Thus, the district court's

---

[4]The basis for the district court's judgment was that the plea bargain had been breached; at no time did the district court indicate that it believed that its prior judgment had been based on an incorrect interpretation of the law (although the State argued as a basis for a new sentencing that the decision was based on an incorrect interpretation of the law).

conclusion that a life sentence "was bargained for at the plea" is clearly erroneous.

Appellant also contends that the district court lacked jurisdiction to modify his sentences after he began serving them. We agree. NRS 176.185(4) provides that "[t]he court shall not suspend the execution of a sentence of imprisonment after the defendant has begun to serve it." The defendant begins to serve a sentence when a judgment of conviction is signed by the judge and entered by the clerk. *See* Miller v. Hayes, 95 Nev. 927, 604 P.2d 117 (1979).[5]

The State contends, however, that the district court retains jurisdiction to modify a sentence if that sentence is based on a materially untrue assumption of fact or mistake of law. The State argues that the district court's conclusion that the maximum sentence it could impose on appellant was twenty years was legally incorrect, thus justifying the district court's action in resentencing appellant. We disagree.

Assuming, without deciding, that the State's interpretation of our holdings in *Halbower* and *Rezin* is correct, the district court's alleged "error" in interpreting the law would not empower the district court to modify appellant's sentences after he began to serve them.

In State v. District Court, 100 Nev. 90, 677 P.2d 1044 (1984), this court stated that, although a district court generally lacks jurisdiction to suspend or modify a sentence after the defendant has begun to serve it, exceptions to this rule have been made when a court has made *"a mistake in rendering a judgment which works to the extreme detriment of the defendant." Id.* at 95, 677 P.2d at 1047 (quoting Warden v. Peters, 83 Nev. 298, 301, 429 P.2d 549, 551 (1967); emphasis in original). The court noted, however, that the district court's authority to modify a sentence was based on the due process rights of the defendant, and stated that "not every mistake or error which occurs during sentencing gives rise to a due process violation. The cases implicitly recognize [that] . . . a due process violation arises only when the errors result in 'materially untrue' assumptions about *a defendant's record." Id.* at 97, 677 P.2d at 1048-49 (emphasis added). The court concluded "that these considerations represent an *appropriate jurisdictional limit* to the correction or modification of a defective sentence by a district court," and held "that if a

---

[5]We note that the district court retains jurisdiction to correct an illegal sentence at any time. *See* NRS 176.555. The State has not argued that appellant's original sentences were illegal.

sentencing court pronounces sentence within statutory limits, the court will have jurisdiction to modify, suspend or otherwise correct that sentence if it is based upon *materially untrue assumptions or mistakes which work to the extreme detriment of the defendant." Id.* at 97, 677 P.2d at 1049 (emphasis added).

In this case, the district court allegedly relied on defense counsel's interpretation of this court's holding in *Halbower* in determining to sentence appellant under NRS 207.010(1).[6] The district court pronounced sentences that were within the limits prescribed by the statute, and which were in all respects legal. The State, relying on its own interpretation of this court's holdings in *Halbower* and *Rezin,* then successfully argued below that appellant should instead have been sentenced under NRS 207.010(2).[7] The district court's alleged "error" in sentencing appellant, however, did not work to the extreme detriment of appellant, and the State was not denied due process by the district court's failure to sentence appellant to longer prison terms. We conclude, therefore, that the district court lacked jurisdiction to modify appellant's sentences in this case after he began to serve them.[8]

---

[6]As noted previously, it is not apparent from this record that appellant's original sentences were based on any mistake of law on the part of the district court. Specifically, it is unclear whether the district court felt itself bound by appellant's interpretation of *Halbower* at the original sentencing hearing. However, for the sake of responding to the State's arguments, we assume without deciding that the district court's original judgments were based, at least in part, on a mistake of law.

[7]We note that, regardless of which interpretation of our holdings in *Halbower* and *Rezin* the district court accepted, the district court had discretion to sentence appellant under either NRS 207.010(1) or NRS 207.010(2). *See* NRS 207.010(4).

[8]Citing cases from other state and federal jurisdictions, the State has argued that a sentencing court should have jurisdiction to modify a sentence under the circumstances of this case. The cases cited by the State do not support the State's position in this case. Most of those cases concern circumstances where a sentence was imposed that was less than the minimum sentence allowed by statute. The appellate courts properly held that the imposition of an illegal sentence did not preclude that later correction of the error by the trial court. *See* Bozza v. United States, 330 U.S. 160, 166-167 (1947); People v. Jackson, 237 Cal.Rptr. 373 (Cal.Ct.App. 1987); State v. Hoisington, 671 P.2d 1362 (IdahoCt.App. 1982); State v. Aguilar, 650 P.2d 32 (N.M.Ct.App. 1982); State v. Smissaert, 694 P.2d 654 (Wash. 1985). In another case cited by the State, the United States Supreme Court upheld against double jeopardy attack a federal statute which allowed the government to appeal a sentence imposed by a federal district court. *See* United States v. DiFrancesco, 449 U.S. 117 (1980). The concerns expressed in *DiFrancesco* are completely foreign to the issues in this case. In still another case cited by the State, the appellate court upheld the trial court's authority to reimpose the same sentence against a defendant after learning that some information relied on at the first sentencing was incorrect. *See* State v.

Accordingly, we reverse the decision of the district court granting the State's motion to modify appellant's sentences, and we remand this matter to the district court with instructions to vacate its amended judgments of conviction and reinstate the original judgments of conviction.

SPRINGER, MOWBRAY, and ROSE, JJ., concur.

STEFFEN, J., dissenting:

I respectfully dissent.

It is manifestly clear that if the prosecutor had stipulated to Staley's status under the "little habitual criminal" statute, NRS 207.010(1), as part of the plea bargain and thereafter, at sentencing, argued for a major habitual criminal status, NRS 207.010(2), this court would have unhesitatingly vacated any sentence based upon the latter statute. In Doane v. State, 98 Nev. 75, 639 P.2d 1175 (1982), the State agreed as part of the plea bargain to stand silent at the time of sentencing. When the judge pronounced the maximum sentence on each of the felony counts involved in the plea, no mention was made as to whether the sentences would run concurrently or consecutively. Under Nevada law, NRS 176.035(1), multiple sentences run concurrently unless otherwise specified. After the court pronounced sentence, the prosecutor asked if the sentences would run consecutively, and the court responded in the affirmative. We reversed and remanded for imposition of concurrent sentences consistent with the original sentencing prior to what we considered to be the prosecutor's breach of the plea agreement. *See also* Riley v. Warden, 89 Nev. 510, 515 P.2d 1269 (1973).

I am unable to ascertain by what principles of criminal or contract law the State is meticulously bound by the terms of a plea agreement and the defendant is not. Here, as noted by the majority, Staley stipulated to a "major habitual criminal status." During the sentencing, *in violation of the stipulation,* defense counsel argued that Staley should be sentenced under the "little habitual criminal statute." Sentences imposed under the major habitual statute must be life sentences with or without parole; sentences pronounced under the minor habitual statute may be not less than ten years nor more than twenty years. Clearly, the

---

Hatton, 409 N.W.2d 854 (Minn. 1987). Finally, in People v. Wright, 450 N.Y.S.2d 473 (N.Y. 1982), the appellate court upheld the trial court's action in correcting an "inadvertent error" in a judgment of conviction which the record clearly indicated resulted when the trial judge misspoke. None of these cases supports the proposition that a district court may modify a legal sentence after a defendant has begun to serve it based on a re-argument of the relevant case law.

sentencing procedure was prejudiced by Staley's breach of the negotiated plea bargain.

Without citing to any authority, the majority declares that "a person cannot stipulate to a status." I suggest that the majority is wrong. Aside from the fact that Staley had incurred the requisite three felony convictions prior to his plea entry in the instant case, Staley was also charged with *seventeen* additional counts of burglary which the State agreed to dismiss as part of the negotiated plea agreement. Under the circumstances, it was perfectly proper for Staley to stipulate to being treated under the major habitual criminal statute. Moreover, for purposes of enhancement, when a defendant admits to prior convictions, as he may, he effectively admits to whatever status the law affixes to the number of prior convictions conceded by the defendant. As held in Hanson v. State, 716 P.2d 688, 690 (Okla.Crim.App. 1986), "In the absence of an objection or evidence proving otherwise, it may be concluded that a conviction admitted by the defendant at trial . . . is final." The fact that a defendant's judicial admission occurs at the entry of a plea or at sentencing, rather than trial, is of no significance. Staley and his counsel were free to admit Staley's status under the major habitual statute.

Moreover, if the majority's contention that a person cannot stipulate to a status is correct, then the plea agreement was the product of a mutual mistake which should provide the State, who has been prejudiced by the mistake, with the right to have the agreement declared invalid.

I suggest that the majority also misses the point in observing that the sentencing judge has a discretion "not to impose a penalty under the habitual criminal statutes regardless of the number of valid prior convictions." It would have made just as much sense to say, in *Doane,* that because the judge had a discretion to sentence Doane originally to consecutive terms, the prosecutor's breach of the agreement to remain silent was of no consequence. The point is, as a result of Staley's breach, the judge elected to sentence Staley under the minor habitual statute. Subsequently, when the judge was made aware of Staley's breach by the State's motion to modify Staley's sentences or to set his guilty pleas aside, the judge determined that Staley should have been sentenced under the major habitual statute and changed the sentence accordingly. In my opinion, the sentencing judge properly exercised her discretion in revising the sentence to comport with her option under the true stipulation between the State and Staley. Once a sentencing judge has determined to apply the major habitual statute, a life sentence with or without parole is mandatory.

In *Doane,* we held that "[c]ommonly, when a breach [of a plea

bargain] occurs, a defendant's rights can be protected either by permitting withdrawal of the negotiated plea or by resentencing before a judge untainted by the violation." 98 Nev. at 77, 639 P.2d at 1176. In the instant case, if the sentencing judge is not to be affirmed in modifying Staley's sentence, the State should be entitled to have Staley's guilty pleas set aside or to have a different judge sentence Staley under circumstances that are in strict accordance with the negotiated plea agreement.

Staley received the full benefit of his plea bargain when *seventeen* pending counts of burglary were dismissed by the State. The State, by reason of Staley's breach of the agreement, has been deprived of its right to have Staley sentenced under agreed upon conditions that should have existed at sentencing. This is but one more instance when the State, representing the people, is prejudiced by unilateral advantages accorded criminal defendants by the judiciary despite clear evidence of guilt.

Because I believe that both the State and the defendant must strictly comply with the terms of a negotiated plea agreement, I must respectfully dissent from the majority's opinion favoring a contrary position.